UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPER DAVIS, a single person,<br><br>Plaintiff,<br><br>v.<br><br>THURSTON COUNTY; THURSTON COUNTY OFFICE OF ASSIGNED COUNSEL; SALLY HARRISON, individually and in her official capacity,<br><br>Defendant. | CASE NO. 11-5583 RJB<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter comes before the court on Defendants' Motion for Summary Judgment (Dkt. 19), Plaintiff's Motion under Fed. R. Civ. P. 56 (d) (Dkt. 21), and Plaintiff's Motion to Amend (Dkt. 21). The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

This civil rights case arises from Plaintiff's criminal conviction and Defendants' role in his defense. Dkt. 1. Defendant now seeks summary dismissal of Plaintiff's Complaint. Plaintiff's motion to delay consideration of the summary judgment motion should be denied as to his federal claim because he does not make a showing that there is "relevant information" which would "justify" his opposition to Defendant's motion to have the claim summarily dismissed.

ORDER ON MOTION FOR SUMMARY JUDGMENT- 1

Plaintiff's ineffective assistance of counsel claim calls into question the fact of his confinement and so should be dismissed as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff's motion to amend his Complaint should be denied without prejudice because it is not yet clear whether it could be saved by amendment. Further, although the Court will likely decline to exercise supplemental jurisdiction over the state law claims, the parties should be given an opportunity to show cause, if any they have, why the Court should not dismiss those claims without prejudice.

I. **FACTS**

A. **RELEVANT FACTS**

On September 19, 2008, Plaintiff attended a party at which he was accused of raping an intoxicated woman who was passed out in a bedroom. Dkt. 21-2. Plaintiff denies raping or assaulting the victim. Dkt. 21-2, at 1. He was charged in Thurston County, Washington Superior Court with Rape in the Second Degree pursuant to RCW 9A.44.050(1)(b). Dkt. 19-2, at 6. Plaintiff, as an indigent adult, was assigned an attorney from the Thurston County Office of Assigned Counsel ("OAC"), James Shackleton. Dkt. 21-2, at 2. The director of the OAC, Ms. Sally Harris, is a Washington lawyer and a defendant here. Dkt. 19-2. In addition to supervising the other attorneys, Ms. Harris, by local court rule, is also "authorized to approve funds for investigative, expert, or other services necessary for an adequate defense for defendants who are 'financially unable to obtain these services.'" Dkt. 19-2, at 2 (*quoting* Thurston County Superior Court Local Criminal Rule 3.1). Approval must be given before "procurement of the services." *Id.*

Eventually, Plaintiff's family hired a private attorney, James Gazori, to defend Plaintiff. Dkt. 21-2, at 3. Accordingly, on April 1, 2009, an order substituting Mr. James Gazori as

defense counsel, was entered into the record. *Id*. Soon thereafter, on April 11, 2009, Mr. Gazori filed a motion with the trial court, seeking approval for up to $3,000 for expert fees for Robert Julien, M.D. Ph.d. *Id.*, at 5. The motion was granted. Dkt. 21-3, at 21. At the time, Mr. Gazori was notified that he had failed to comply with the Thurston County Local Rules of Criminal Procedure, and that indigent defendant's requests for funds for expert witnesses and investigators should be made through the OAC. Dkt. 19-2, at 23. On April 14, 2009, Mr. Gazori received an email from Ms. Harris, advising him again that he had failed to follow the local rules and procedures regarding requesting expert witness fees for indigent defendants. Dkt. 21-1, at 6. In early June, Mr. Gazori filed a Professional Service Authorization Form with OAC requesting the $3,000.00 to hire Dr. Julien. *Id.*, at 6. On June 3, 2009, the OAC approved $900.00 of the requested amount. *Id*.

Mr. Gazori also hired an investigator, who conducted interviews beginning on June 4, 2009. Dkt. 21-1, at 6. The investigator traveled to the scene and completed other investigative tasks. *Id*. Mr. Gazori stated that he filed an application with OAC to approve funds for the investigator but it was misplaced or not received by OAC. *Id*. He states that he filed one that was finally received on June 17, 2009. *Id.* On June 24, 2009, the OAC approved $480 for the investigator for work done after that date. Dkt. 19-2, at 2. The investigator was not paid for services done before that date and did not bill for any services after June 24, 2009. *Id*.

After initial plea negotiations in early July 2009, Mr. Gazori decided that he needed to have a psycho-sexual evaluation done on Plaintiff to strengthen his negotiating position. Dkt. 21-1, at 6. The trail date was fast approaching (August 31, 2009) and Mr. Gazori applied to OAC for funding for the evaluation. *Id.* On July 17, 2009, the request for a psycho-sexual evaluation was approved, if Dr. Julian received no additional funding beyond the $675.00

already approved for him, and if Plaintiff's family agreed, as they did, to pay $250.00 of the $350.00 polygraph test. Dkt. 21-3, at 51-53.

On July 29, 2009, Mr. Gazori filed a motion on behalf of Plaintiff, requesting an order compelling the OAC to authorize funds for his experts or dismiss the charges because the failure to authorize those funds was a violation of Plaintiff's due process rights. Dkt. 21-1, at 4. Ms. Harrison filed a brief in response, requesting that the superior court deny the motion for more funds. Dkt. 19-2, at 25. During oral argument, Plaintiff's counsel moved that the superior court find invalid the local rule requiring that funding requests go through the OAC as violative of due process. Dkt. 19-2, at 23-27. Mr. Gazori argued:

> So in response somewhat to the declaration filed by Ms. Harrison, I'm not taking a shotgun approach or a multiple theory approach of this case. I have some very specific reasons as to why these services are requested, and they can make a very substantial difference in what my client is facing in this case. I feel bad for the director of OAC in the sense that I think systematically and by its very nature it is a position of conflict of interest because I am going to a third party with respect to issues of due process for my client where I think it really is and ought to be the Court's responsibility to ensure those due process rights and not a third party that doesn't necessarily have the same interests or concerns or requirements of advocacy that I have as the actual attorney for the defendant. It's a conflicted position in the sense then that this person has to weigh out what I am bringing and asking for against a budget that is set and provided for by the very same county that I'm asking the funds from. So I think it's an inherently flawed system, and the Court should find that the local court rule . . . is simply invalid.

Dkt. 19-2, at 25-26. He sought a process by which his requests for funding went directly to the court. *Id.* Ms. Harrison testified that the OAC had a budget of $40,000 for expert witness and investigation funds for the year and that Plaintiff had requested $6,000 worth including funds for out of state experts. *Id.,* at 28. The Thurston County Superior Court denied the motion, specifically finding that neither the OAC's decision not to authorize the additional funds for experts or the local rule violated Plaintiff's due process rights. Dkt. 19-2, at 30-32. The Superior Court noted:

| | |
|---|---|
| 1 |       The bottom line is in every aspect of government there are fiscal limits. Nobody has carte blanche. Nobody can perhaps do everything that they would |
| 2 | like or think appropriate to do, and at some point in every process there has to be a weighing of what moneys are available and what is being sought from a |
| 3 | standpoint of due process. |
| 4 |       Due process means that there has been a process that can be reviewed by someone. In my opinion the local rule sets forth a process from which the Court |
| 5 | can review - as a matter of fact I am reviewing it today if you will - and I think that the standard is whether or not there are indeed considerations given to a |
| 6 | particular fact pattern and the moneys available and all of the other things. In this case I am told that your request is actually we would like money for this because |
| 7 | this may be an alternative to needing money for that if you will. I don't know what the future holds with this case. |
| 8 |       In any event, I believe that the Office of Assigned Counsel has indeed a process that does give a defendant such as Mr. Davis the right to petition and argue for particular moneys. That has occurred in this case. There has been a |
| 9 | decision reached. I cannot find that that decision was without justification. |

Dkt. 19-2, at 31.

In September of 2009, Plaintiff entered a guilty plea to Assault in the Third Degree and was sentenced to 22 months in custody, based in part, on his prior record. Dkt. 19-2, at 35-45. Plaintiff was not required to register as a sex offender. *Id*. Plaintiff spent approximately 16 months in custody. Dkt. 1, at 2. Plaintiff did not file a direct appeal or any collateral attack on his judgment and sentence, in either state or federal court.

**B. PROCEDURAL HISTORY**

Plaintiff filed this action on July 27, 2011. Dkt. 1. Plaintiff claims, via 42 U.S.C. § 1983, that Defendants deprived him of his right to effective assistance of counsel guaranteed him by the Sixth and Fourteenth Amendment to the United States Constitution. *Id*. Plaintiff's Complaint states that Ms. Harrison was acting under the color of state law when she was determining: a) how the overall resources of the OAC were to be spent, b) the circumstances under which investigators and expert witnesses would be hired and how much money should be allotted them, c) when to petition the county commissioners for additional resources for a

particular case, d) the division of the caseload, and e) the training, supervising, and monitoring agency subcontractors. *Id.* Plaintiff states that "[t]he performance of the foregoing functions did not involve the exercise of independent professional judgment in the representation of Christopher Davis." Dkt. 1, at 12. Plaintiff alleges that:

> [Defendant Thurston County] knew that the indigent accused faced a substantial risk of serious harm from ineffective assistance of counsel when they placed Ms. Harrison in a position of conflict. Ms. Harrison simultaneously was obligated to exercise independent professional judgment in considering funding for indigent defendants while at the same time protecting her position as Director of the Thurston County Office of Assigned Counsel by placing budget considerations above the needs of indigent clients represented by her office.

*Id.*, at 13.

Plaintiff also makes state claims of "professional malpractice" against Ms. Harris, arguing that, (contrary to his allegations under his constitutional claim) as a licensed attorney, "she had a duty to provide appropriate funds for investigative, expert, and other reasonable expenses to allow Mr. Gazori to competently and diligently represent [Plaintiff.]" *Id.*, at 14. Plaintiff alleges that she interfered with his defense when "her office simultaneously represented Mr. Davis in his criminal matter and at the same time filed adverse pleadings against Mr. Davis," when she filed a brief in opposition to his motion to compel funds or have the charges dismissed as a violation of his due process rights. *Id.* He asserts that:

> Ms. Harris also had a duty not to represent [Plaintiff] under circumstances where representation was materially limited by her own interest and clear conflict by interfering with [Plaintiff's] defense. Ms. Harrison attempted to maintain good job performance within unreasonable budget restraints while representing clients who relied upon her to exercise independent professional judgment with regard to the need for funding for investigative, expert and other services based upon the actual needs and charges and not by competing funding interest[s] to stay in budget that would be direct[ly] subject to her personal job performance and rating by Thurston County.

*Id.*, at 15. Plaintiff also claims under state law that Ms. Harrison, as a licensed attorney,

breached her fiduciary duties to him, and violated the Washington Consumer Protection Act, RCW 19.86, *et seq*. *Id.* Plaintiff asserts a negligence claim against Thurston County, alleging that the county had a "non-delegable duty" to provide Plaintiff competent representation, and failed in its duty when it placed Ms. Harrison in a conflict of interest position as Director of OAC and overseer of indigent funding. *Id.* Plaintiff seeks "a declaratory judgment that Sally Harrison and Thurston County violated his Sixth Amendment right to counsel," and for damages, attorneys' fees, and costs. *Id.*, at 18.

Discovery is to be completed by May 21, 2012, dispositive motions are due June 19, 2012, and trial is set to begin September 17, 2012. Dkt. 18.

Defendants now move for summary dismissal of Plaintiff's claims, arguing that: 1) Plaintiff's § 1983 claims are precluded by *Heck v. Humphrey*, 2) the malpractice and breach of fiduciary duty claims should be dismissed because Ms. Harris and Plaintiff did not have an attorney client relationship, 3) Plaintiff's CPA claim fails because he cannot establish the elements as a matter of law, and 4) Plaintiff's negligence claim against the County should be dismissed because it did not breach a duty of care it owed Plaintiff. Dkt. 19.

Plaintiff responds and argues that his ineffective assistance of counsel claim is not barred by *Heck v. Humphrey* because he is no longer in custody (and that concurrences in Supreme Court precedent suggest that an exception to the *Heck* bar should exist if Plaintiff is unable to pursue habeas relief after release from incarceration) and because his ineffective assistance and due process challenges to Ms. Harrison's administrative decision and or personal motive to deny, reduce, or delay expert witness funding would not necessarily imply the invalidity of his conviction. Dkt. 21. He argues that he should be permitted to amend his Complaint because he "has uncovered facts during investigation that suggest that discrimination may have played a role

in the denial of the requested funds." *Id.* Plaintiff argues that his malpractice claim against Ms. Harrison should not be dismissed because there was an attorney-client relationship between them, and even if there was not, she still had a duty to Plaintiff which was actionable. *Id.* In arguing that an attorney client relationship existed, he argues that:

> There can be no doubt in this case that Ms. Harrison discussed case strategy with Mr. Gazori. Thus, her discussions with Mr. Gazori go well beyond determining whether the request for expert and investigative funding was necessary and reasonable. . . . James Gazori was required to disclose client confidences to Ms. Harrison in determining which expert to hire. These confidences would not have been disclosed if Ms. Harrison simply accepted the applying attorneys' assertion that the services were necessary. Thus, by limiting the funding and imposing her opinions of which expert to use, Ms. Harrison was directly affecting the outcome of the case.

*Id.,* at 12. Plaintiff lastly argues that his CPA claim should not be dismissed because it "fits squarely into a CPA action." *Id.* Plaintiff also requests that the Court defer considering the motion for summary judgment, under Fed. R. Civ. P. 56(d). *Id.* Plaintiff again mentions his motion to amend his Complaint, to "add the allegation of discrimination claim and *respondeat superior*." *Id.*

C. ORGANIZATION OF OPINION

This opinion will first consider Plaintiff's motion to delay the summary judgment motion pursuant to Fed. R. Civ. P. 56(d), then the arguments regarding Plaintiff's federal constitutional claim: whether *Heck v. Humphrey* bars Plaintiff's claim for relief under § 1983. This opinion will then discuss Plaintiff's motion to amend and lastly, whether the Court will exercise jurisdiction over the state law claims.

II. **DISCUSSION**

A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

B.  **PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 56 (d)**

Under Fed. R. Civ. P. 56 (d), if a non-moving party shows "that for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion, . . . allow time to obtain . . . discovery . . . or issue any other appropriate order." To prevail under this Rule, parties opposing a motion for summary judgment must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Blough v. Holland Realty Inc.*, 574 F.3d 1084, 1091(9th Cir. 2009)*(citing Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir.2004)). The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that the additional evidence would prevent summary judgment. *Id.* (*citing Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir.2001)).

Plaintiff's motion under Rule 56 (d) should be denied in so far as his federal constitutional claim is concerned. Plaintiff has failed to show that there is "relevant information" which would "justify" his opposition to Defendant's motion to have the claim summarily dismissed as barred by *Heck v. Humphrey*. In so far as his claims under state law are concerned, Plaintiff's motion should be denied without prejudice pending the outcome of this Court's decision on whether it should exercise supplemental jurisdiction on the state law claims.

C.  **FEDERAL CLAIM - INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM PURSUANT TO 42 U.S.C. § 1983**

1. <u>Ineffective Assistance of Counsel Claim under 42 U.S.C. § 1983 – Generally</u>

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

A public defender representing a client in the lawyer's traditional adversarial role is not a state actor. *Miranda v. Clark County*, 319 F.3d 465, 468 (9th Cir. 2003) (*citing Polk County v. Dodson,* 454 U.S. 312 (1981)). The *Polk County* court recognized an exception, however, and held that a public defender's "administrative and possibly investigative functions" would constitute state action because those decisions did not necessarily involve the lawyer's traditional adversarial role. *Id.*

Plaintiff's ineffective assistance of counsel claim here is similar to the Plaintiff's claim in *Miranda v. Clark County,* 319 F.3d 465 (9th Cir. 2003), with one telling difference discussed below - Miranda's capital murder conviction was overturned on collateral review based on ineffective assistance of counsel. *Miranda*, 319 F.3d 465 (2003). Review of the case is useful in framing the issues here, however. In *Miranda*, the Ninth Circuit held that under *Polk County* the defendant's assigned counsel was not a state actor and the § 1983 claims against him should be dismissed. *Id*. The Court held that the head of a public defender's office was a state actor when he created a policy under which all defendants took polygraph tests. *Id.* Those defendants that performed well received a greater allocation of resources than those defendants that did poorly. *Id.* Under the policy, if a defendant appeared guilty based on the polygraph test, the public defender's office "sharply curtailed the quality of the representation by limiting the investigatory and legal resources provided." *Id.* The Ninth Circuit found that "[t]he policy, while falling short of complete denial of counsel, is a policy of deliberate indifference to the requirement that every

criminal defendant receive adequate representation regardless of guilt or innocence." *Id.*, at 470. The Court held that the ineffective assistance of counsel claims, asserted against the head of the public defender's office and the County, then should not be dismissed. *Id.* The *Miranda* Court also found that the head of the public defender's office and County's policy of assigning the least-experienced attorneys to capital murder cases without providing any training demonstrated a "callous indifference" to the defendant's constitutional right to effective assistance of counsel, and so those claims should not be dismissed. *Id.,* at 471.

The most challenging aspect of the ineffective assistance of counsel claim, and of the entire case, is the role Ms. Harrison played in Plaintiff's defense. Whether she was acting as his traditional defense counsel when she made the funding determinations of which Plaintiff complains or whether she was acting in a more administrative capacity, and thus bound by considerations of due process (as was argued to the trial court), is difficult. Plaintiff takes both positions. Dkt. 21, at 12. In arguing that she did operate as traditional counsel, Plaintiff argues:

> There can be no doubt in this case that Ms. Harrison discussed case strategy with Mr. Gazori. Thus, her discussions with Mr. Gazori go well beyond determining whether the request for expert and investigative funding was necessary and reasonable. . . . James Gazori was required to disclose client confidences to Ms. Harrison in determining which expert to hire. These confidences would not have been disclosed if Ms. Harrison simply accepted the applying attorneys' assertion that the services were necessary. Thus, by limiting the funding and imposing her opinions of which expert to use, Ms. Harrison was directly affecting the outcome of the case.

*Id.,* at 12. He also argues that she did not "exercise independent professional judgment in the representation of Christopher Davis." Dkt. 1, at 12 (regarding his constitutional claims).

To the extent that Plaintiff bases his claim for ineffective assistance of counsel against Ms. Harrison in her performing in the "traditional role of an attorney for a client" she is not a state actor under *Polk County* and the ineffective assistance of counsel claim should be dismissed

to that extent. To the extent that Plaintiff bases his ineffective assistance of counsel claim on Ms. Harrison performing what were essentially administrative functions – determining how the resources of the overall office were spent for example, she was a state actor, like the head public defender in *Miranda*. In any event, Defendants argue that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

2. <u>*Heck v. Humphrey* Bar</u>

A claim that relates to the fact or duration of confinement is not cognizable in a civil rights action unless an inmate can demonstrate that the conviction or sentence has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477 (1994). The proper avenue to challenge the fact or duration of confinement is to file a writ of habeas corpus rather than a claim under § 1983. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). "The language of the habeas statute is more specific, and the writ's history makes clear that it traditionally has been accepted as the specific instrument to obtain release from [unlawful] confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 79(2005) (*citing Preiser*, at 486). A habeas petitioner must fully to exhaust state remedies, which is not required for a § 1983 action. *Id.* "These considerations of linguistic specificity, history, and comity [have] led the Court to find an implicit exception from § 1983's otherwise broad scope for actions that lie within the core of habeas corpus." *Id.* (*internal citations omitted*).

Plaintiff's constitutional claim for ineffective assistance of counsel, brought pursuant to § 1983, is barred by the *Heck v. Humphrey*. Plaintiff's claim challenges the fact of his confinement – that his conviction was attained in violation of his constitutional rights. The core of Plaintiff's § 1983 claim is that he received ineffective assistance of counsel from Ms. Harrison and the County because of Ms. Harrison's decisions denying, in part, his requests for funding for investigators and expert witnesses. His Complaint specifically seeks a "declaratory judgment

that Sally Harrison and Thurston County violated his Sixth Amendment right to counsel." Dkt. 1. He also seeks damages (Dkt. 1), presumably as a result of the time he spent in custody and because he now has an assault conviction on his record (Dkt. 21-2, at 4)(Plaintiff stating that he is having difficulty getting a job because of this conviction). If Plaintiff prevails in his ineffective assistance of counsel claim, he would necessarily implicate the validity of his underlying conviction. Further, Plaintiff did not appeal the superior court's decision regarding the constitutionality of Ms. Harrison's funding decisions in either a direct appeal or collateral attack via a personal restraint petition. He did not file a habeas corpus petition. He has failed to show that the conviction has been invalidated. His claims challenge his propriety of his conviction. His ineffective assistance of counsel claim is barred by *Heck*.

Plaintiff argues that success with his ineffective assistance of counsel claim would not necessarily imply the unlawfulness of the State's custody because he is only "challenging Sally Harrison's administrative decision and/or personal motive to deny, reduce or delay the requested expert and investigative funding, thus interfering with his right to effective assistance of counsel and due process." Dkt. 21, at 9. He argues his case is like *Skinner v. Switzer*, 131 S.Ct. 1289 (2011), where the Supreme Court held that a post conviction claim for DNA testing could be raised in a § 1983 action, without having to show that the conviction had been invalidated. Dkt. 21. In allowing the request for injunctive relief – for DNA testing – to proceed in a § 1983 case, the Court reasoned that the relief would not necessarily implicate the underlying conviction because the result of the test may prove to be exculpatory, inculpatory, or inconclusive. *Skinner v. Switzer*, 131 S.Ct. 1289 (2011). Plaintiff's reliance on *Skinner* is misplaced. Plaintiff here is not merely seeking funds so that he could have access to the expert witnesses or investigators that were involved in his case. He is challenging funding decisions made by Ms. Harrison who

was, to some degree, involved in the strategy of his defense. Plaintiff specifically argues that "by limiting the funding and imposing her opinions of which expert to use, Ms. Harrison was directly affecting the outcome of the case." Dkt. 21. By implication, then, Plaintiff is challenging the outcome of the case – his conviction.

Plaintiff argues that his § 1983 claims should not be barred by *Heck v. Humphrey* because he is no longer in custody, citing the concurrence in *Spencer v. Kemna*, 523 U.S. 1 (1998). Dkt. 21, at 7-8. In *Spencer*, the plaintiff "diligently sought relief for his claim of invalid revocation of parole." *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006). After exhausting his claims in state court, he filed a federal habeas petition. *Id*. "His prison term ended, however, before the court could render a decision. Justice Souter, writing for the concurring justices, stated, '*Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim.'" *Id*. Plaintiff's reliance on *Spencer* is also misplaced. Unlike the plaintiff in *Spencer*, Plaintiff here did not "diligently" seek relief in the Washington state courts. He did not make any effort to file an appeal. Further, Plaintiff challenges the validity of his underlying conviction, not the duration of his confinement like the Spencer plaintiff did.

Plaintiff's ineffective assistance of counsel claim is barred by *Heck v. Humphrey*. His ineffective assistance of counsel claim should be dismissed.

**D. MOTION TO AMEND**

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. Futility alone can justify the

denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)(*internal quotations and citations omitted*).

Plaintiff's motion to amend (Dkt. 21) should be denied without prejudice. Plaintiff failed to attach a proposed amended complaint and it is unclear what claim he is adding. He does say that "he has uncovered facts during the investigation that suggest discrimination may have played a role in the denial of the requested funds." Dkt. 21, at 10. Plaintiff does not make any allegations beyond this bare assertion. In any event, he has not made a showing that the claim would not be barred by *Heck v. Humphrey,* or that the belated discovery rule applies. His motion to amend should be denied without prejudice.

At one point in his briefing, Plaintiff does make passing reference a "due process claim." Dkt. 21, at 9. Such claim does not appear in his complaint, nor is it part of any other briefing. Further, it is unclear whether it would run afoul of the *Rooker- Feldman* doctrine due to the superior court's ruling on the issue.

**E. STATE LAW CLAIMS**

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

Here, two of the four conditions in § 1367(c) are present. As above, all Plaintiff's federal claims are dismissed by this order. Accordingly, this Court has "dismissed all claims over which it has original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction over the state law claims under § 1367(c)(3). Moreover, the remaining state claims "raise novel or complex issues of state law" under § 1367(c)(1), determinations for which the state court is uniquely suited. Accordingly, the values of economy, convenience, and fairness may well be served by this Court's declining to exercise supplemental jurisdiction. *See Acri* at 1001. Further, this Court would have to decide whether under Washington law, a duty was owed to Plaintiff. *See Taylor v. Stevens County,* 111 Wn.2d 159, 163 (1988). Because state courts have a strong interest in enforcing their own laws, *See Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 352 (1988), the value of comity is also served by this Court declining jurisdiction. The values of economy, convenience, fairness and comity are well served by this Court's declining to exercise supplemental jurisdiction.

Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991) in the interest of fairness, the parties should be given an opportunity to be heard on whether the state law claims should be dismissed without prejudice. Parties should be ordered to show cause why the remaining state law claims should not dismissed without prejudice. Parties' briefs, if any, are due January 26, 2012. Parties' briefs should not exceed three pages. Consideration of the parties' responses to the Order to Show Cause will be noted for January 27, 2012. In the meantime, the portion of Defendants' Motion for Summary Judgment (Dkt. 19), which is based entirely on state law, should be denied without prejudice, but may be renoted if the Court ultimately decides to exercise supplemental

jurisdiction.

III. **ORDER**

Therefore, it is hereby **ORDERED** that:

- Defendants' Motion for Summary Judgment (Dkt. 19) **IS GRANTED**, as to Plaintiff's federal claims and **DENIED WITHOUT PREJUDICE** as to Plaintiff's state law claims;

- Plaintiff's Motion under Fed. R. Civ. P. 56 (d) to delay consideration of the summary judgment motion (Dkt. 21) **IS DENIED** as to Plaintiff's federal claims and **DENIED WITHOUT PREJUDICE** as to Plaintiff's state law claims;

- Plaintiff's Motion to Amend (Dkt. 21) **IS DENIED WITHOUT PREJUDICE**, and

- Parties are **ORDERED TO SHOW CAUSE**, if any they have, why the remaining state law claims should not dismissed without prejudice. Parties' briefs, if any, are due **January 26, 2012**. Parties' briefs should not exceed three pages. Consideration of the parties' responses to the Order to Show Cause is **NOTED** for **January 27, 2012**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of January, 2012.

                                            ROBERT J. BRYAN
                                            United States District Judge